2

UNITED STATES, Appellee,

v.

Bamidele AJAYI, also known as Temidire Ajayi, Defendant– Appellant.

Docket No. 02–1327.

United States Court of Appeals, Second Circuit.

June 13, 2003.

Raymond J. Lohier, Jr., Assistant U.S. Attorney (Laura Grossfield Birger, Assistant U.S. Attorney, of counsel), for James B. Comey, U.S. Attorney, Southern District of New York, for Appellee.

Colleen P. Cassidy, The Legal Aid Society, Federal Defender Division, Appeals Bureau, New York, NY, for Defendant– Appellant.

Present: STRAUB, B.D. PARKER, and RAGGI, Circuit Judges.

## SUMMARY ORDER

THIS SUMMARY ORDER WILL NOT BE PUBLISHED IN THE FEDERAL REPORTER AND MAY NOT BE CITED AS PRECEDENTIAL AUTHORITY TO THIS OR ANY OTHER COURT, BUT MAY BE CALLED TO THE ATTENTION OF THIS OR ANY OTHER COURT IN A SUBSEQUENT STAGE

OF THIS CASE, IN A RELATED CASE, OR IN ANY CASE FOR PURPOSES OF COLLATERAL ESTOPPEL OR RES JUDICATA.

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, at Foley Square, in the City of New York, on the 13th day of June two thousand and three.

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the conviction and sentence of the district court are **AFFIRMED.**

Defendant-appellant Bamidele Ajayi appeals from a judgment of the United States District Court for the Southern District of New York (Thomas P. Griesa, *Judge*), following his conviction for mail and wire fraud, in violation of 18 U.S.C. §§ 1341 and 1342, and for subscribing to false federal income tax returns, in violation of 26 U.S.C. § 7206(1). He was principally sentenced to 37 months' incarceration and three years' supervised release on the fraud counts and to 36 months' incarceration and one year of supervised release on the tax counts, with the sentences to be served concurrently.

The Government's evidence established that Ajayi was involved in a fraudulent scheme to obtain $500,000 in life insurance benefits from Prudential Insurance Companies of America by claiming to be the beneficiary on a policy on the life of a fictitious brother, Temidire, whom Ajayi falsely claimed had died. On appeal, Ajayi contends that the district court (1) improperly struck his peremptory challenges to two prospective jurors by improperly conducting the analysis required by *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), and (2) made a series of erroneous evidentiary rulings.

During jury selection, Ajayi used the first eight of his peremptory challenges against women, seven of whom were white. The Government challenged Ajayi's "pattern of striking all female jurors and specifically white female jurors." Defense counsel stated that, of the last two jurors she had challenged, one was the daughter of a retired police officer and the other was a secretary at a law firm. The district court struck these two peremptory challenges and reinstated both jurors.

In *Batson v. Kentucky*, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the Supreme Court articulated a three-step test to determine whether a prosecutor improperly executed peremptory challenges:

First, the defendant must make a prima facie showing that the prosecutor has exercised peremptory challenges on the basis of race. Second, if the requisite showing has been made, the burden shifts to the prosecutor to articulate a race-neutral explanation for striking the jurors in question. Finally, the trial court must determine whether the defendant has carried his burden of proving purposeful discrimination.

*Hernandez v. New York*, 500 U.S. 352, 358–59, 111 S.Ct. 1859, 114 L.Ed.2d 395 (1991) (citations omitted) (describing *Batson* test). Peremptory challenges based on gender also are subject to a *Batson*-style test for equal protection violations. *J.E.B. v. Alabama*, 511 U.S. 127, 144–45, 114 S.Ct. 1419, 128 L.Ed.2d 89 (1994). We give great deference to the trial court's findings with regard to *Batson*'s third step. *Hernandez*, 500 U.S. at 364–65; *see also United States v. Taylor*, 92 F.3d 1313, 1326 (2d Cir.1996).

■ Ajayi argues that the district court did not properly perform the three-step analysis required under *Batson* and *J.E.B.* because it failed to assess the credibility of the explanations offered for the two chal-

lenges. Contrary to this contention, the court specifically assessed defense counsel's professed motives for the challenges and concluded, "I really don't credit— those don't seem to me to be credible reasons." The district court's decision to strike the two challenges did not violate *Batson.*

Next, Ajayi challenges the district court's (1) admission of two letters that Prudential claims adjuster Kathleen Seifert sent to Ajayi (the "Seifert letters"), (2) exclusion of statements contained in a report prepared by Prudential during its investigation of Ajayi's claim, and (3) exclusion of statements from a report that Wally Fakuade, Esq., prepared in connection with a civil lawsuit against Prudential. We review these evidentiary rulings for abuse of discretion. *United States v. SKW Metals & Alloys, Inc.,* 195 F.3d 83, 87 (2d Cir.1999); *United States v. Forrester,* 60 F.3d 52, 59 (2d Cir.1995).

■ The Seifert letters included the following explanation for Prudential's refusal to pay benefits to Ajayi:

> The investigation has established that the information in the documents submitted as proof of death of Temidire Ajayi on June 12, 1999 cannot be substantiated. Specifically, Dr. E. Oladipo Adu, who signed the Medical Certificate of Cause of Death, has stated that he never medically attended to Mr. Ajayi, that Mr. Ajayi did not die in General Hospital Isolo and the Medical Certificate of Cause of Death should be disregarded. In addition, the cemetery attendant, Mr. Disu Olayeye, states that Temidire Ajayi was not buried in the Matori Cemetery, Matori, Lagos.

The district court admitted the letters during Seifert's testimony at trial, giving the jury an extensive limiting instruction that these letters were being admitted "simply to show that Prudential denied the claim and stated reasons for such denial" and that the letters could only be probative of whether there was a "fraudulent intent on the part of Mr. Ajayi in dealing with Prudential." Moreover, the court repeatedly warned the jury that the statements in the Seifert letter were "not proof" of what actually happened in Nigeria.

Despite these precautions, we find the district court's decision to admit the Seifert letters problematic. There was no dispute that Prudential had denied Ajayi's claim, and the statements contained in the Seifert letters were barely probative, if at all, of Ajayi's state of mind at the times relevant to the various counts of the indictment. The Seifert letters were dated October 5, 1999, and the activities underlying all but one of the wire and mail fraud counts, as described in the indictment, occurred well prior to that date. The remaining count of wire fraud allegedly took place on October 6, and there is no indication in the record that Ajayi had received the Seifert letters prior to the event covered in that count. The Government argues that the purported statements of Adu and Olayeye might have caused Ajayi, if innocent, to doubt that his claim was valid and, therefore, to abandon it. But the Government had charged Ajayi with committing mail and wire fraud, not with failing to abandon a fraud well after it had occurred. Consequently, the incriminating out-of-court statements in the Seifert letters—by declarants not subject to cross-examination—were not reasonably related to the conduct charged in the indictment, and their admission was especially troublesome when balanced against the serious Confrontation Clause problems potentially created. U.S. Const. amend. VI; *see also Ryan v. Miller,* 303 F.3d 231, 247 (2d Cir.2002).

Nevertheless, the admission of the letters, even if erroneous, was harmless in

light of the Government's overwhelming evidence of Temidire Ajayi's non-existence. *See, e.g., Kotteakos v. United States,* 328 U.S. 750, 764–65, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946) (holding that erroneous admission of evidence is harmless if there is fair assurance that the evidence did not substantially influence the jury); *United States v. Spell,* 789 F.2d 143, 144 (2d Cir. 1986). The Government provided abundant proof of, among other things, (1) Ajayi's participation in the preparation of Temidire's insurance policy application, (2) numerous federal agencies' lack of expected documentation of Temidire's existence, (3) fraud in Temidire's application for a social security number, and (4) a complete inability to verify Temidire's purported residence and his professional and related activities in the United States.

Next, Ajayi challenges the district court's exclusion of certain statements contained in the Prudential report. The Prudential report contained several summaries of interviews with Nigerian witnesses, and Ajayi sought to introduce these statements at trial. The court concluded that these statements, if admitted, would open the door to the entire Prudential report, a complex document whose admission, in the court's view, would be "about as gross and bad a use of inadmissible hearsay as I can imagine." In reaching its conclusion, the court did not abuse its discretion.

Finally, Ajayi challenges the district court's treatment of the Fakuade report, parts of which the court excluded both under Federal Rule of Evidence 403 and under Federal Rule of Criminal Procedure 16(b). The portions of the Fakuade report at issue contained statements from Nigerian witnesses that were inconsistent with Adu's and Olayeye's purported statements in the Seifert letters. Under Rule 403, as the district court noted, "relevant evidence may be excluded if the probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues or misleading the jury." With respect to the statements in the Fakuade report, the court found that "I cannot imagine a greater potential for confusion and misleading of the jury than to have these materials presented to the jury." This conclusion involved no abuse of discretion. Since the court properly excluded these statements under Rule 403, we need not reach the question of whether they were also excludable under Rule 16. Accordingly, we **AFFIRM** the district court's judgment.